UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SHERRI AKERS, | } |
| Plaintiff, | } |
| v. | } Case No.: 7:13-CV-1296-RDP |
| SANDERSON FARMS, INC., et al. | } |
| Defendants. | } |

## MEMORANDUM OPINION

This matter is before the court on (1) Defendants' Partial Motion for Summary Judgment (Doc. # 24). The Motion has been fully briefed. (Docs. # 27 and 31).

This case arises out of a traffic accident occurring while Defendant Paul Flowers was operating a commercial vehicle in connection with his employment with Defendant Sanderson Farms. The accident occurred when Flowers's vehicle struck a traffic control signal or "arrow board" in the left northbound lane of Interstate 59 causing the sign to strike Plaintiff Sherri Akers.

## I.      Relevant Undisputed Facts

Plaintiff was injured on November 14, 2012, while working with Alabama Guardrail. (Doc. # 10 at ¶ 4-5). At the time of the accident, Akers was part of a crew setting up to remove and replace portions of guardrail along the left northbound lane of I-59 outside of Tuscaloosa, Alabama. (Doc. # 10 at ¶ 4). The individual defendant, Paul Flowers, was operating a tractor trailer and traveling northbound on Interstate 59 in the course of his employment with Sanderson Farms. (Doc. # 27-17 at 154-155).

The collision occurred at approximately 12:17 AM on November 14, 2012. (Doc. # 27-4 at 446). Flowers had driven for Defendant Sanderson Farms for three consecutive nights leading up to the night of the collision. (Doc. # 27-17 at 123-128). Immediately before the accident, Flowers had driven for three straight hours without a break. (Doc. # 27-17 at 131, 132).

Flowers had been traveling in the right hand lane; however, he merged into the left hand lane to allow room for a truck and a car to enter the interstate. (Doc. # 27-17 at 145, 154). Flowers testified that, as he proceeded in the left lane and crested a hill, a bright light hit him in the face and he threw up his hand to shield his eyes from the light. (Doc. # 27-17 at 154-56, 158). Flowers's tractor trailer struck a traffic control signal or arrow board and the control signal/arrow board struck Plaintiff who was in the process of setting it up. (Doc. # 27-17 at 104-5; Doc. # 10 at ¶ 4).

The crest of the hill is over one mile before the collision site, which is at the bottom of a long downhill grade. (Doc. # 27-6 at 4). There is a clear line of sight from the crest of the hill, along the mile to the collision site. (Doc. # 27-6 at 4).

At the time of the accident, Flowers was not on a cell phone, there was no evidence he was speeding, and he was not under the influence of alcohol or illegal drugs. (Doc. # 27-17 at 144, 154, 180, 184).

Flowers obtained his Commercial Driver's License in 1992, and his license has never been suspended or revoked. (Doc. # 27-17 at 48; Doc. # 24-2). Flowers drove a commercial vehicle for Schneider National from 1992 to 1996, and for Sanderson Farms from 1996 until 2012. (Doc. # 27-17 at 48; Doc. # 24-2). At the time Flowers was hired by Sanderson Farms, his Motor Vehicle Report revealed no prior accidents and only one prior citation where Flowers was cited for not having his log book. (Doc. # 27-17 at 53; Docs. # 24-2 and 24-3. During his

employment with Sanderson Farms, which began in 1996, Flowers was not involved in any accidents other than the accident at issue in this case. (Doc. # 24-2). Moreover, during his driving career, he has received only one speeding citation ─ and that was over ten years ago. (Doc. # 24-2).

Flowers testified that, prior to the accident, he did not see any indication there was any danger or construction ahead. (Doc. # 27-17 at 104, 153). However, there is evidence in the Rule 56 record that there were multiple reflective orange road work signs and reflective cones posted on the interstate leading up to the construction site, and a light tower lighting the area where the workers were replacing the guardrail. (Doc. # 27-7 at 16-19, 24, 29; Doc. # 27-8 at 13-14, 25-28; Doc. # 27-5 at 29). There is also evidence that the arrow board was lit at the time of the accident. (Doc. # 27-8 at 14-16; Doc. # 27-8 at 25-28).

Flowers's employment with Sanderson Farms ended after the accident. (Doc. # 27-27 at 11-12). Within a month or two after the accident, Flowers applied for disability benefits. (Doc. # 27-17 at 29-33).

As part of the application process, Flowers indicated that he had suffered headaches for the last twenty years, although he had not sought treatment for them since 1991. (Doc. # 27-2 at 101). He reported that, when a headache is severe, he passes out, and that he has had three to five incapacitating headaches. (Doc. # 27-2 at 101). Flowers also has said that he suffers from sleep disturbances (where he may go two to three days without sleep and sleep in one hour increments) dating back prior to the accident, and has experienced persistent hallucinations. (Doc. # 27-3 at 205).

Flowers had been diagnosed with anxiety and reported related insomnia in January 2012 (Doc. # 27-25 at Bates No. 148-53). Nevertheless, he did not report any sleep or nervous

N/A
N/A

disorders during his June 2012 or September 2012 medical examinations. (Doc. # 27-20 at 343, 346).

Prior to the accident, despite these and other reported health conditions, no medical examiner had opined that Flowers was medically unfit to operate a commercial vehicle. (Doc. # 27-20). In late June 2012, the medical examiner noted that Flowers's blood pressure was "borderline," but he gave Flowers a medical certificate valid for three months.[1] (27-20 at Bates No. 343, 345-46). On September 24, 2012, less than two months before the accident, the medical examiner signed a one-year certificate for Flowers. (Doc. # 27-20 at Bates No. 348).

On two occasions, in 2001 and in 2003, the medical examiner checked the box that indicated that Flowers had monocular vision. (Doc. # 27-20 at Bates No. 314, 317). However, in none of medical examinations since 2003, did a medical examiner report Flowers as having monocular vision or disqualify him from driving because of his vision. (Doc. # 27-20 at Bates No. 320, 323, 326, 329, 332, 335, 341, 344, 347).[2] In 2008 and 2009, Flowers was diagnosed with cataracts ─ but again, he was not disqualified from driving by the medical examiner. (Doc. # 27-20 at Bates No. 330, 333).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of

---

[1] From June 7 to 29, 2011, Flowers had been temporarily disabled due to his elevated blood pressure. (Doc. # 27-19 at 337-339).

[2] In 2007, Flowers was treated for an eye infection (conjunctivitis). After using prescribed eye drops for two weeks, Flowers reported he was doing much better. (Doc. # 27-24 at 34-35, 44).

informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof of trial, he must come forward with at least some evidence to support each element essential to his case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by plaintiffs are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be

granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co*., 243 F. Supp.2d 1257, 1262 (D.Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc*., 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.   Analysis

Defendants have moved for summary judgment on the following claims: (1) the wantonness claim in Count I against both Defendants, (2) the negligent and wanton entrustment claim in Count II against Defendant Sanderson Farms, and (3) the negligent and wanton hiring, training, supervision and retention claim in Court III against Sanderson Farms.  (Doc. # 24). Plaintiff does not oppose entry of summary judgment on the negligent and wanton hiring, training and supervision claims in Count III, but does oppose the Motion as to negligent and wanton retention.  She also opposes summary judgment on both her wantonness and her negligent and wanton entrustment claims.

#### A.   Wantonness

The Alabama Code defines wantonness, as it relates to civil law, as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others." Alabama

6

Code § 6–11–20(b)(3) (1975). Several cases cite *Bozeman v. Central Bank of the South's* definition of wantonness as the agreed upon definition in Alabama. 646 So.2d 601 (Ala. 1994). In *Bozeman*, the Supreme Court of Alabama settled any dispute about the definition of wantonness. The court concluded that wantonness involved "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." 646 So.2d at 603 (citing *McDougle v. Shaddrix*, 534 So.2d 228 (Ala. 1988)).

"Wantonness is a question of fact for the jury, unless there is a [] lack of [substantial] evidence from which the jury could reasonably infer wantonness." *Cash v. Caldwell*, 603 So.2d 1001, 1003 (Ala. 1992).[3] "The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference ... [I]t may not be left to the conjecture or speculation of the jury." *Roberts v. Brown*, 384 So.2d 1047, 1048 (Ala. 1980). *See also Klaber by & through Klaber v. Elliott*, 533 So.2d 576, 579 (Ala. 1988) ("Knowledge need not be proven directly but may be inferred from the facts of the case.").

### 1. Defendant Sanderson Farms

Sanderson Farms seeks summary judgment on Plaintiff's wantonness claim because, it argues, Plaintiff has presented no evidence whatsoever that it had a conscious appreciation that putting Flowers on the road was likely to cause injury. Plaintiff argues that Flowers was incompetent because of his medical conditions, and seeks to impute all of Flowers's knowledge about his medical conditions to his employer. However, that argument is based upon a hindsight

---

[3] The court has modified this quote to account for Rule 56's requirement that a claim must be supported by "substantial evidence."

view of evidence that was not known by Sanderson Farms until *after* the accident. Thus, the Rule 56 record does not support Plaintiff's argument.

Flowers obtained his Commercial Driver's License in 1992 and his license has never been suspended or revoked. (Doc. # 27-17 at 48; Doc. # 24-2). Flowers worked for Sanderson Farms from 1996 until 2012, and his only citation during that sixteen year period was for speeding ─ an incident that occurred over ten years prior to the accident at issue here. (Doc. # 27-17 at 48, 53; Doc. # 24-2 and 24-3). Prior to being hired by Sanderson Farms, Flowers's Motor Vehicle Report revealed no prior accidents, and only one prior citation for not having his log book. (Doc. # 27-17 at 53; Docs. # 24-2 and 24-3).

Moreover, at no time was Flowers denied a DOT medical examiner's certificate based on his health. This is important.

> Congress has delegated to the Secretary of Transportation the authority to prescribe driver qualifications. *See* 49 U.S.C. § 31102(b)(1). Pursuant to this authority, the DOT promulgated the Federal Motor Carrier Safety Regulations, under which a person "shall not drive a commercial motor vehicle" without a "medical examiner's certificate that [the person] is physically qualified." 49 C.F.R. § 391.41(a). Specifically, "the medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.43(f).

*Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 638 (8th Cir. 2003). During his employment with Sanderson Farms, Flowers was regularly certified as physically qualified to safely operate a commercial vehicle by a medical examiner. In light of Flowers' virtually spotless driving record and his regular certification to operate commercial vehicles, and because Plaintiff has not presented any substantial evidence that Sanderson Farms knew (or should have known) of the information that came out after he filed his disability claim (which occurred *after* his employment ended), the court cannot say that Plaintiff has presented any evidence that, at the

time of the accident, Sanderson Farms acted with any "degree of consciousness" that "injury was likely to result" from its allowing Flowers to drive its vehicle. *Lafarge North America, Inc. v. Nord,* 86 So.3d 326, 333 (Ala. 2011) (citing *Tolbert v. Tolbert*, 903 So.2d 103, 114-15 (Ala. 2004)). Therefore, Sanderson Farms is entitled to summary judgment on Plaintiff's wantonness claim.

### 2. Defendant Flowers

The same Rule 56 findings cannot be made regarding Flowers individually. Within a month or two after the accident, Flowers applied for disability benefits. (Doc. # 27-17 at 29-33). From this evidence, along with the factual assertions he made in connection with his application, a jury could find that Flowers was aware he was unable to safely drive commercial vehicles at the end of his employment.

Moreover, as part of the process of applying for disability benefits, Flowers reported that he had suffered headaches for the last twenty years (Doc. # 27-2 at 101), that when a headache was severe, he passed out, and that he had had three to five incapacitating headaches.[4] (Doc. # 27-2 at 101). Flowers also reported that, dating back prior to the accident, he would go two to three days without sleep, or sleep in one hour increments, and also suffered persistent hallucinations. (Doc. # 27-3 at 205). Flowers had been diagnosed with anxiety (and reported related insomnia) in January 2012 (Doc. # 27-25 at Bates No. 148-53), but he did not report any sleep or nervous disorders to the medical examiner during either of his June 2012 or September 2012 medical examinations. (Doc. # 27-20 at 343, 346). Nor did he report these problems to Sanderson Farms. A reasonable jury could conclude from this record evidence that Flowers knew of the potential that he would not be certified to operate a commercial vehicle if he

---

[4] This information and knowledge goes well beyond a mere two-week period in which Flower's blood pressure was elevated.

disclosed these conditions, and that he had a conscious appreciation that operating a commercial vehicle put himself and others at risk. Therefore, defendant Flowers is not entitled to summary judgment on Plaintiff's wantonness claim.

> **B.  Negligent and Wanton Entrustment**

The elements of a cause of action for negligent entrustment are: (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages. *Prill v. Marrone,* 23 So.3d 1, 8 (Ala. 2009) (citing *Halford v. Alamo Rent–A–Car, LLC*, 921 So.2d 409, 412 (Ala. 2005) and *Mason v. New*, 475 So.2d 854, 856 (Ala. 1985)). The elements regarding incompetence require a showing that the operator of the vehicle was an incompetent or reckless person and that the owner of the vehicle had knowledge of that fact. *See Edwards v. Valentine,* 926 So.2d 315, 321 (Ala. 2005).

"[A] plaintiff alleging negligent entrustment may show that the driver to whom the defendant entrusted the vehicle was 'unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics or conditions,' including 'general incompetence' or 'habitual negligence.' ... More specifically, proof may 'be established by evidence of previous acts of negligent or reckless driving, ... previous accidents, or previous acts of driving while intoxicated.'" *Edwards,* 926 So.2d at 321-22 (quoting Note, Negligent Entrustment in Alabama, 23 Ala. L.Rev. 733, 738 (Summer 1971)). "[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford v. Alamo Rent–A–Car, LLC*, 921 So.2d 409, 413–14 (Ala. 2005).

Here, even assuming that Flowers was incompetent, Plaintiff has not presented any evidence (much less substantial evidence) that Sanderson Farms was aware of his incompetency. As discussed above, Flowers's Commercial Driver's License was issued in 1992 and was never

suspended or revoked. (Doc. # 27-17 at 48; Doc. # 24-2). Flowers's only received one citation for speeding ─ over ten years prior to the accident, and one for not having his log book. (Doc. # 27-17 at 48, 53; Doc. # 24-2 and 24-3. Furthermore, Flowers was regularly certified as physically qualified to safely operate a commercial vehicle by a medical examiner.

Again, in light of Flowers' virtually spotless driving record and his regular certification to operate commercial vehicles, the court cannot sat that Plaintiff has presented any evidence either that Flowers was incompetent or, if he was, that Sanderson Farms had knowledge of that incompetence. Therefore, Sanderson Farms is entitled to summary judgment on Plaintiff's negligent entrustment claim.

### C. Negligent Retention

"[T]o prove a claim under Alabama law for either negligent/wanton entrustment, negligent hiring, negligent supervision or negligent retention, a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent." *Britt v. USA Truck, Inc*., 2007 WL 4554027, *4 (M.D. Ala. 2007) (citing *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So.2d 665, 682 (Ala. 2001) (negligent supervision); *Bruck v. Jim Walter Corp.*, 470 So.2d 1141, 1144 (Ala. 1985) (negligent/wanton entrustment); *Brown v. Vanity Fair Mills, Inc*., 277 So.2d 893, 895 (Ala. 1973) (negligent retention); *Sanders v. Shoe Show, Inc*., 778 So.2d 820, 824 (Ala. Civ. App. 2000) (negligent hiring)). Therefore, the analysis applicable to Plaintiff's negligent entrustment claim is equally applicable to her negligent retention claim. In *Halford v. Alamo Rent-A-Car*, LLC, 921 So.2d 409, 413-14 (Ala. 2005), the Alabama Supreme Court summarized prior precedent on the issue of incompetency in a single sentence: "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle."

Prior to the accident which is the basis for this lawsuit, Defendant Flowers had exhibited no signs of incompetence. Under Alabama law, even the "nonpossession of a valid driver's license is not evidence of incompetence." *Edwards*, 926 So.2d at 323. Here, there was no demonstrated inability to properly drive a vehicle. Indeed, Defendant Flowers's driving record was virtually spotless. Because Plaintiff has failed to present any evidence which would support a conclusion that Sanderson Farms was negligent in retaining Flowers as a driver at any point prior to the accident, Sanderson Farms is entitled to summary judgment on Plaintiff's negligent retention claim.

**IV.   Conclusion**

For the foregoing reasons, Defendant Sanderson Farms is entitled to summary judgment on (1) the wantonness claim in Count I, (2) the negligent and wanton entrustment claim in Count II, and (3) the negligent and wanton hiring, training, supervision and retention claim in Court III. Defendants' Motion as to Plaintiff's wantonness claim against Defendant Flowers is due to be denied.

A separate order will be entered.

**DONE** and **ORDERED** this January 8, 2015.

                                               _____
                                               **R. DAVID PROCTOR**
                                               UNITED STATES DISTRICT JUDGE